UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KOBY A. BOHNERT, | ) |
| Plaintiff | ) ) ) |
| vs. | ) CASE NO. 2:20-cv-00246 ) |
| MIDWEST COMMUNICATIONS, INC., | ) ) ) |
| Defendant | ) |

***PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND REQUEST FOR TRIAL BY JURY***

### I.  INTRODUCTION

Plaintiff Koby A. Bohnert ("Bohnert") is pursuing claims under the Americans with Disabilities Act ("ADA") against her former employer, Defendant Midwest Communications, Inc. ("Midwest Communications").

### II.  FACTUAL ALLEGATIONS

1. Bohnert resides in Brazil, Clay County, Indiana.

2. Midwest Communications operates radio stations in Terre Haute, Indiana and in several states through the Midwest.  Bohnert was hired for her position by the previous radio station owner, Emmis Communications, on or about July 15, 2013.  Midwest Communications purchased the Terre Haute radio stations and became Bohnert's employer on or about January 30, 2017.

3. Throughout her employment with Midwest Communications, Bohnert did good work and met all of Midwest Communications's reasonable expectations, Bohnert continued to serve as Midwest Communications' Terre Haute area Business Manager until she was wrongfully

terminated on October 15, 2019.

4.  Midwest Communications claimed to Bohnert that it fired her because it was eliminating her position.  Bohnert does not believe this excuse to be true, however, at the time Bohnert was terminated, Midwest Communications had multiple open employment positions 1) it was trying to fill and 2) for which Bohnert was very qualified.  This included positions in Midwest Communications' Terre Haute, Indiana office, such as an open Sales Representative position. More telling, the Sales Representative job in Terre Haute would likely have paid as much, if not more (because of commissions) than Bohnert's Business Manager job.  Midwest Communications still fired Bohnert even though she would have continued employment as a Sales Representative.

5.  On or about June 9, 2017, Mrs. Bohnert was diagnosed with Stage 4 breast/liver cancer.  Bohnert has been undergoing extensive and aggressive cancer treatment since her June 2017 diagnosis.  She has endured chemotherapy and radiation.  Bohnert has had multiple surgeries as well.

6.  On or about February 26, 2018, Bohnert had three surgeries to treat her cancer. She required hospitalization for a week and five weeks of medical leave to recover.  Bohnert used certified leave under the Family and Medical Leave Act at that time.  Bohnert returned to work on April 9, 2018 and worked on a reduced schedule for about 3 weeks before she returned to work full time.

7.  Bohnert had cancer reconstructive surgery on December 18, 2018, missed a few full days of work and returned to work full time on January 7, 2019.  Bohnert had another reconstructive surgery on April 30, 2019 and returned to work on or about May 13, 2019.

Bohnert was also scheduled for a surgery that took place on October 31, 2019, but was originally planned to take place in November 2019. Bohnert let her Midwest Communications supervisors know that she had another surgery scheduled. She would need approximately two of her available vacations days to recover from the surgery. Midwest Communications terminated Bohnert on October 15, 2019 before she had this planned surgery.

8. With respect to her chemotherapy, Bohnert has undergone chemotherapy every 21 days for more than 2 years. Her care providers have accommodated Bohnert's work schedule and, generally, her chemotherapy has been scheduled to occur on a Thursday to minimize the time Bohnert has to miss work. Bohnert, who was salary paid, was able to adjust her work schedule and continue to get all of her work done. With respect to radiation treatments, Bohnert underwent 25 radiation sessions over a five week period, from April 18, 2018 to May 22, 2018. She used her lunch hour to go to the radiation session and worked before and afterward.

9. Throughout her cancer treatment, Bohnert continued to do good work and perform her job duties successfully. She has used certified intermittent leave under the Family and Medical Leave Act to cover absences from work, particularly time after surgeries.

10. On October 15, 2019, General Manager Tim Huelsing visited Bohnert's Terre Haute, Indiana office. He told Bohnert to attend a "budget meeting." When Bohnert entered this meeting, Huelsing handed her a termination letter and a proposed severance agreement.[1] Huelsing told Bohnert, "Today is your last day." He told Bohnert her job was being eliminated in a reduction in force. Based upon investigation, this appears to be a lie. No one else in Terre

---

[1] The severance offered was minimal (6 weeks of salary), but it was a particularly unattractive offer because it was conditioned upon a full release of all claims against Midwest Communications, Inc. plus an added 6 month covenant not to compete. Bohnert rejected this offer of severance.

Haute lost a job. Midwest Communications was actively seeking to hire sales representatives at that same time, including a sales representative for the Terre Haute stations, which would have either kept the number of employees the same or increased the work force. At this same time, it promoted one of its Terre Haute radio station disc jockeys from part time to full time. Moreover, Bohnert directly asked Huelsing if other business managers were losing jobs and he could only say "I don't know." Bohnert also directly asked Huelsing why she wasn't being offered one of Midwest Communications' open positions of employment if, in fact, she was only losing her job because it was being eliminated. Again, Mr. Huelsing had no answer, but he did not offer to let Bohnert maintain her employment or to apply for the open jobs.

11. Bohnert called Midwest Communications' Corporate Human Resources Vice President, Esther Gillis, to talk about her termination. Bohnert asked Ms. Gillis why she wasn't offered one of Midwest Communications' open positions of employment or another job. Ms. Gillis said only, "well, we didn't even think about that or know you would be interested." Still, neither Ms. Gillis or anyone at Midwest Communications took any action to help Bohnert preserve employment or take or even apply for one of the available and open jobs. Midwest Communications would not consider Bohnert for an open job. As mentioned above, Bohnert was particularly qualified for the open sales representative position in Terre Haute. She even performed sales representative duties at different times during her employment.

12. Midwest Communications fired Bohnert because of her disabilities and because Midwest Communications did not want to accommodate Bohnert's occasional medical leave needed when she had surgeries and certain cancer treatments. Mrs. Bohnert was more than qualified to continue her own Business Manager position with Midwest Communications or to

take any other open business or sales position (including an open Sales Representative position for the Terre Haute, Indiana stations) available.  Mrs. Bohnert has always had a good work history.  But for Bohnert's known disabilities, she would never have been fired.

13. Mrs. Bohnert believes she may have been targeted for termination, in part, because of the health insurance costs (including increased health insurance premium costs) associated with her cancer treatments.  Bohnert had health insurance through her employment with Midwest Communications.  She has received records that more than $2,200,000.00 has been paid by her health insurer to her health care providers.

14. Bohnert's requests for medical leave to accommodate surgeries and chemotherapy were easy to accommodate.  The Seventh Circuit has long interpreted the ADA's reasonable accommodation requirement as including paid or unpaid leave, subject to an employer's demonstration of undue hardship. *See, e.g.*, *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir. 1998) (stating that there was sufficient evidence from which a reasonable juror could conclude that the second medical leave of 2-4 weeks, as requested—following an earlier leave of three weeks and a modified schedule for three weeks—would have been a reasonable accommodation and was a question of fact for the jury).

15. Finally, based upon the extensive knowledge Midwest Communications supervisors had about Bohnert's disabilities and medical problems, along with her need for treatment, Bohnert can certainly prove that she is protected under the ADA because Midwest Communications regarded her as disabled.

16. For purposes of her claim under the ADA, the primary reasonable accommodation Bohnert needed from Midwest Communications was occasional medical leave for her cancer

treatments.  A medical leave is a type of reasonable accommodation under the ADA.  See *Schwab v. N. Illinois Med. Ctr.*, 42 F.Supp.3d 870, 883-884 (N.D. Ill. 2014).  More specifically, the ADA expressly states that a "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position ..., and other similar accommodations for individuals with disabilities."  42 USC § 12111(9)(B).  Bohnert's detailed reports, including written medical records he gave to her Midwest Communications supervisors, were more than enough to put Midwest Communications on notice that Bohnert was requesting and entitled to medical leave (or a "modified work schedule") to permit her the time for hospitalizations and medical treatments for her Stage 4 Cancer.  The request for time off from work was particularly reasonable in light of the fact that Bohnert had available vacation time and PTO when she was fired.  If nothing else, Midwest Communications could have allowed Bohnert to use her vacation and PTO to cover missed time from work.

17. Bohnert has been significantly harmed by Midwest Communication's discriminatory termination of her employment.  She is seeking all lost wages and benefits, reinstatement or front pay and benefits, and all compensatory and punitive damages, including compensatory damages for mental and emotional stress and anguish, humiliation, loss of enjoyment of life, career damage, and all pecuniary damages.  Mrs. Bohnert is also seeking payment of all of her reasonable attorney's fees, costs and expenses.

18. Bohnert is a qualified individual with disabilities, but she was and is perfectly capable of performing all essential functions of her former job with Midwest Communications or other, open jobs that Midwest Communications refused to consider Bohnert as a candidate or permitted her to apply for to preserve her employment.

### III.  JURISDICTION AND VENUE

19. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 as Bohnert's claims under the ADA raise federal questions of law.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because of the unlawful conduct alleged below was committed in the Southern District of Indiana.  More specifically, this case is properly assigned to the Terre Haute Division of the U.S. District Court for the Southern District of Indiana because Midwest Communications employed Bohnert to work for it at its Terre Haute, Vigo County, Indiana location.

### IV.  ADMINISTRATIVE PROCEDURES

21. Bohnert has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit.  Bohnert received her Notice of Right to Sue from the Equal Employment Opportunity Commission on May 7, 2020.

### V.  STATEMENT OF CLAIMS

#### A.  Americans with Disabilities Act Amendments Act of 2008 Claims

22. Bohnert incorporates herein by reference paragraphs 1 through 21 above.

23. Midwest Communications knowingly and intentionally discriminated against Bohnert in violation of the Americans with Disabilities Act Amendments Act of 2008.

24. Midwest Communications's violations of Bohnert's ADA rights included, but are not limited to, the following:

   a. Failing to reasonably accommodate Bohnert's known disabilities. Accommodation would have been particularly easy in this instance as Midwest Communications needed only permit Bohnert to use her

        intermittent leave rights under the FMLA.

        b.    Discriminatory termination of Bohnert from employment based upon her known disabilities.

25.    Midwest Communications is an employer as defined under the ADA, with fifteen or more employees working for it at all times relevant to this cause of action.

26.    Bohnert is a qualified individual with a disability who is capable of performing all essential functions of her job or other business or sales jobs with Midwest Communications, with or without reasonable accommodation. Bohnert is expressly asserting and alleging that her Stage 4 cancer is an actual disability that has substantially limited her in one or more major life activities. Bohnert's Stage 4 Cancer is an actual disability under the ADA and it substantially limits her in the operation of major bodily functions and limits her caring for herself and working

27.    Additionally, Midwest Communications terminated Bohnert and discriminated against her based upon Midwest Communications's regard of Bohnert as being disabled with her Stage 4 cancer.

28.    Midwest Communications terminated Bohnert rather than engage with her in the interactive communication process required under the ADA.

29.    Midwest Communications discriminated against and terminated Bohnert for having engaged in protected activity, to wit, making known her disabilities, and need to seek treatment that would entail medical leave (days off from work).

30.    Prior to her termination from employment, Bohnert performed her job duties well and met her employer's reasonable expectations.

31.    Bohnert's disabilities improperly motivated Midwest Communications's decision

to discharge her from employment. Such wrongful actions on the part of Midwest Communications violate Title I of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a and the Americans With Disabilities Amendments Act of 2008.

   32.   Midwest Communications failed and refused to make reasonable accommodations to Bohnert's known and/or perceived physical limitations, in violation of Title I of the Americans With Disabilities Act, 42 U.S.C. § 12112(b)(5)(A). The effect of Midwest Communications's conduct has been to deprive Bohnert of equal employment opportunities and to deprive her of the same rights as are enjoyed by other citizens.

   33.   As a direct and proximate result of Midwest Communications's conduct, Bohnert has sustained substantial economic losses, including past and future wage losses, and other economic benefits. Bohnert has also sustained the loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, career damage, mental and emotional distress, discomfort, and loss of enjoyment of life, all to her detriment and damage in amounts not fully ascertained. Further, as described hereinabove, Midwest Communications acted oppressively, maliciously, fraudulently and outrageously toward Bohnert, with conscious disregard for Bohnert's known rights and with the intention of causing unjust and cruel hardship to Bohnert. In acting in a deliberate and intentional manner, Midwest Communications intended to and did injure and annoy Bohnert. Bohnert is seeking punitive damages against Midwest Communications for its violations of the ADA.

   34.   As a result of Midwest Communications's discriminatory practices, Bohnert has found it necessary to retain the services of an attorney and is therefore entitled to her reasonable

attorney's fees, costs and expenses in this matter.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Koby A. Bohnert respectfully requests that the Court enter judgment against Defendant Midwest Communications, Inc. and issue all available relief to her, including, but not limited to, the following:

1. All damages available under the ADA, including all back pay and benefits, all available compensatory and punitive damages, reinstatement and/or front pay and benefits, and payment of all reasonable attorney's fees, costs and expenses;

2. Costs;

3. Pre-judgment interest, if available; and

4. Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net

## REQUEST FOR TRIAL BY JURY

Comes now Plaintiff Koby A. Bohnert, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP


By /s/Robert P. Kondras, Jr.
    Robert P. Kondras, Jr.
    Attorney No. 18038-84
    100 Cherry Street
    Terre Haute, IN 47807
    (812) 232-9691
    Facsimile: (812) 234-2881
    kondras@huntlawfirm.net